# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ELIZABETH P., )<br>)<br>    Plaintiff, )<br>  v. )<br>)<br>MARTIN J. O'MALLEY, )<br>Commissioner of )<br>Social Security, )<br>)<br>)<br>    Defendant. ) | 1:23CV417 |

## **RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Elizabeth P. brought this action to obtain review of a final decision of the Commissioner of Social Security[1] denying her claim for social security disability insurance benefits and a period of disability. The Court has before it the certified administrative record and dispositive briefs from each party.

### I. PROCEDURAL HISTORY

In 2020, Plaintiff filed an application for disability insurance benefits and a period of disability alleging a disability onset date of April 9, 2021. (Tr. 200-01.) The application was denied initially and upon reconsideration. (Tr. 112-15, 118-24.) After a hearing, the Administrative Law Judge ("ALJ") determined on August 31, 2022, that Plaintiff was not

---

[1] On December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. O'Malley is substituted for his predecessor, Kilolo Kijakazi, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

disabled under the Act. (Tr. 15-73.) The Appeals Council denied a request for review, making the ALJ's decision the final decision for purposes of review. (Tr. 1-6.)[2]

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hunter*, 993 F.2d at 34 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue is not whether Plaintiff is disabled but whether the finding that she is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the sequential analysis to ascertain whether the claimant is disabled. *See* 20 C.F.R. § 404.1520.[3] *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th

---

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 4.)

[3] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or

2

Cir. 1999). The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 17.) At step two the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease, status-post remote surgery; breast cancer; diabetes mellitus; hypertension; vertigo/seizures/syncope; hyperlipidemia; gastroesophageal reflux (GERD)/hiatal hernia; obesity; sleep apnea; asthma; fatty liver[.]" (Tr. 17.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (Tr. 19.)

The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that she was able to perform light work except her

> dominant right upper extremity is limited to frequent reaching in all directions, pushing, pulling, operating hand controls, handling, fingering, and feeling. The claimant is limited to occasional climbing ramps and stairs, but no climbing ladders, ropes, or scaffolds. The claimant can occasionally balance and stoop but frequent kneeling, crouching, and crawling. The claimant must avoid concentrated exposure to pulmonary irritants, such as fumes, odors, dust, gases, poor ventilation, and the like. The claimant must avoid all exposure to workplace hazards, such as dangerous moving machinery and unprotected heights.

---

equaled the requirements of a listed impairment; (4) could return to his [or her] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.* "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *Hunter*, 993 F.2d at 35 (internal citations omitted).

(Tr. 23.) At the fourth step, the ALJ determined that Plaintiff was capable of performing her past relevant work as a "retail manager, stores" as it is generally performed. (Tr. 28.) The ALJ made no step five finding.

## IV. ISSUES AND ANALYSIS

Plaintiff raises two objections. First, Plaintiff contends that "Remand Is Required Because the ALJ Failed to Either Include Mental Limitations He Found Credible in His RFC Finding or to Explain Why He Was Omitting These Credible Mental Limitations." (Docket Entry 7 at 3.) Second, Plaintiff contends that "Remand Is Required Because the ALJ's Finding that [she] Could Perform Her Past Relevant Work Was Legally Prohibited Because this Prior Work Was a Composite Job." (*Id.* at 14.) As explained below, neither of these objections has merit.

### A. Depression

At step two of the sequential evaluation process, the claimant bears the burden of demonstrating a severe, medically determinable impairment that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 404.1509; *Shrecengost v. Colvin*, No. 14CV506, 2015 WL 5126117, at *3 (W.D.N.Y. Sept. 1, 2015). The Act describes "a physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A physical or mental impairment must be established by objective medical evidence from an acceptable medical source. 20 C.F.R. § 404.1521. A statement of symptoms, diagnosis, or medical opinion is not

4

sufficient to establish the existence of an impairment. *Id.* A "[l]icensed physician" or "[l]icensed psychologist" is an "acceptable medical source." 20 C.F.R. § 404.1502(a).

An impairment is "severe" unless it "has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984); *see also* 20 C.F.R. § 404.1522(a); *Brookover v. Saul*, No. 2:20-CV-24-M, 2021 WL 4147075, at *4 (E.D.N.C. June 25, 2021). As such, the "severity standard is a slight one." *Stemple v. Astrue*, 475 F. Supp. 2d 527, 536 (D. Md. 2007). When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into the written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

"[A]n error at step two in failing to properly consider whether an impairment is severe may be harmless where the ALJ considers that impairment in subsequent steps." *Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (citations omitted); *see also Shinseki v. Sanders*, 556 U.S. 396, 407 (2009); *Garner v. Astrue*, 436 Fed. App'x 224, 225, n* (4th Cir. 2011). However, provided that the claimant has at least one severe impairment, the ALJ must consider the combined effect of all of the claimant's impairments,

irrespective of whether they are severe, in determining the claimant's RFC. 20 C.F.R. § 404.1545(e); *Walker v. Bowen*, 889 F.2d 47, 49-50 (4th Cir. 1989). Finally, non-severe impairments do not require limitations in the RFC if there is substantial evidence and an adequate explanation for the omission. *See, e.g.*, *Paris F. v. Comm'r of Soc. Sec.*, No. 20-CV-6724S, 2022 WL 2092904, at *4 (W.D.N.Y. June 10, 2022); *Smith v. Colvin*, No. CIV-13-617-F, 2014 WL 4384705, at *2 (W.D. Okla. Sept. 3, 2014); *Krosse v. Colvin*, No. 13-CV-270-PJC, 2014 WL 1342970, at *7 (N.D. Okla. Apr. 3, 2014) ("Contrary to Krosse's argument, the ALJ was not required to find that his nonsevere depression resulted in limitations in his ability to do work-like functions."); *Cooks v. Astrue*, No. 1:10-CV-02714-TWT, 2012 WL 567189, *n.12 (N.D. Ga. Jan. 24, 2012) (collecting cases).[4]

Here, the ALJ adequately explained why Plaintiff's non-severe mental impairment of depression and no more than mild limitations in all four paragraph B criteria (Tr. 17-19) did not warrant any mental limitations in the RFC. Specifically, after finding Plaintiff's depression

---

[4] The Fourth Circuit, in finding that an ALJ failed to account for a claimant's moderate limitation in concentration, persistence, and pace in the RFC, held in *Mascio v. Colvin* that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." 780 F.3d 632, 638 (4th Cir. 2015). However, this case is factually distinct because none of Plaintiff's limitations in the four relevant domains are moderate. *See William W. v. Kijakazi*, No. 1:22CV473, 2023 WL 5436005, at *15 (M.D.N.C. Aug. 23, 2023) ("[T]he weight of post-*Mascio* authority among the district courts in the Fourth Circuit does not favor extending *Mascio* to *mild* limitations in the broad functional areas.") (collecting cases). Beyond that, as explained in this Recommendation, the ALJ here pointed to good reasons for deciding to omit mental limitations from the RFC determination. *See id.* at 15-16 ("Moreover, even assuming *Mascio* applies to . . . mild limitations . . . the ALJ's step two evaluation cites to substantial evidence to support the lack of mental restrictions in the RFC.").

caused mild limitations in the paragraph B criteria at step two (Tr. 17-19), the ALJ reasonably determined that no mental work-related limitations warranted inclusion in the RFC (Tr. 19, 23). The ALJ identified the substantial evidentiary support for his fact-finding when he discussed the relevant mental health evidence at step two and later in the decision. (Tr. 17-19, 27.)

Specifically, the record in this case showed that:

- Plaintiff had no history of specialized mental health treatment and merely took medication (Celexa) prescribed by her primary care physician (although according to Plaintiff, Celexa was prescribed for fibromyalgia, not depression) (Tr. 18, 51-52, 77-78, 1348);

- Plaintiff denied psychiatric and behavioral complaints on the review of systems during most medical appointments and had normal mental status findings, including normal orientation, mood, affect, behavior, attention, concentration, memory, speech, fund of knowledge, and judgment (Tr. 18, 27, 1390 ("No depression."); 1436 ("She denies having any anxiety or depression[.]"); 1510 ("Depression: 0"); 769 (normal mental status examination including thought content); 1332 (same); 1340 (same); 1348 (no suicidal or homicidal ideation); *see also* Tr. 382, 392, 402-03, 414, 418, 1373, 1429, 1460, 1464, 1470, 1480, 1495, 1507-08, 1518, 1527, 1533, 1536, 1548);

- The state agency psychological consultants who conducted independent record reviews both concluded that Plaintiff had no mental work-related limitations resulting from her nonsevere depression (Tr. 17-19, 27, 77-78, 85-88); and

- Plaintiff admitted she could care for her personal needs without reminders; prepare simple meals; perform household chores; shop in stores; manage her finances; socialize with others in person, play cards, go out to eat, follow written and spoken instructions, handle stress, and handle changes in routine "ok"; get along "good" with authority figures; and was never fired or laid off due to social interaction problems. (Tr. 18, 77-78, 242-47, 297-302.)

Because the ALJ accurately pointed out, among other things, that Plaintiff regularly

denied depression or symptoms related to depression, and regularly displayed normal mental status reports, the ALJ gave good reasons for declining to adopt mental limitations in the RFC. *See, e.g., Paris F.*, 2022 WL 2092904, at *4; *Smith*, 2014 WL 4384705, at *2; *Krosse*, 2014 WL 1342970, at *7; *Cooks*, 2012 WL 567189, *n.12 (collecting cases). The ALJ's narrative discussion of the above-described evidence at step two (see Tr. 17-19) and later in the decision (see Tr. 27) demonstrates that he built a logical bridge between the record and his conclusion that mental RFC limitations were unnecessary.[5] For all these reasons, Plaintiff's objection has no merit.[6]

---

[5] The Court considers the ALJ's decision in its entirety. *See Keene v. Colvin*, 732 Fed. App'x 174 (4th Cir. 2018) ("We must read the ALJ's decision as a whole."); *Smith v. Astrue*, 457 Fed. App'x 326, 328 (4th Cir. 2011). In other words, the ALJ need only review the evidence once in his decision. *See McCartney v. Apfel*, 28 Fed. App'x 277, 279 (4th Cir. 2002). To the extent Plaintiff contends otherwise (Docket Entry 10 at 3), she is mistaken. Additionally, for the many reasons set forth in this Recommendation, the Court is not left to speculate as to why the ALJ concluded that Plaintiff's RFC required no mental limitations. The Court can and has meaningfully reviewed the ALJ's decision. The many out-of-district and out-of-circuit cases that Plaintiff cites to in her brief (Docket Entry 7 at 8-12) are factually distinct and not helpful in this matter.

[6] The ALJ appropriately found Plaintiff retained the mental abilities to perform skilled work given the record evidence showing limited and conservative mental health treatment, normal mental status findings, the absence of medical opinions or prior administrative medical findings suggesting any mental work-related limitations, and Plaintiff's own self-reported activities and abilities. (Tr. 17-19, 27.) Plaintiff faults the ALJ for not explaining how she could perform the "complex and variable activities" required by her past relevant work. (Docket Entry 7 at 7.) But, as demonstrated above, the record showed that Plaintiff consistently exhibited normal mental status findings, including normal orientation, mood, affect, behavior, attention, concentration, memory, speech, fund of knowledge, thought content, and judgment, and that she engaged in an array of daily activities. These mental status examinations and daily activities provided ample record support for the ALJ's finding that Plaintiff could perform skilled work. Plaintiff likewise faults the ALJ for not explaining how she could perform her "intensely social past relevant work." (*Id.* at 8.) However, by her own admission, she shopped in stores, got along "good" with authority figures, denied social interaction problems, was

8

**B. Step Four**

Plaintiff's step four challenge is also without merit. At step four, a claimant has the burden to show that he is incapable of performing his past relevant work as actually or generally performed in the national economy. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *Mohamadmajid S. v. Saul*, No. 5:18-CV-00005, 2019 WL 9075957, at *3 (W.D. Va. July 10, 2019).[7] When a claimant can only perform composite jobs, an ALJ may only consider whether the claimant can perform those jobs as they were actually (and not generally) performed by the claimant. *See Lewis v. Saul*, No. 1:17CV1115, 2020 WL 33118, at *3 (M.D.N.C. Jan. 2, 2020) ("[A]n ALJ must find the Plaintiff capable of performing the composite job only if he or she can perform all parts of the job as it was actually performed.") (internal citations and quotations omitted).

There is no Fourth Circuit case law addressing what constitutes a composite job in this context. The Agency has however provided guidance. SSR 82-61 provides that

> composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case. For those instances where available documentation and vocational resource material are not

---

never fired or laid off because of problems getting along with other people, socialized with friends in person, played cards, and went out to eat. (Tr. 244, 246, 300-01.) Thus, here too, the record amply supports the ALJ's fact-finding.

[7] To determine the requirements of occupations as generally performed, the ALJ may rely on vocational expert testimony or information from the DOT. *See* SSR 00-4P, 2000 WL 1898704, at *2-3; SSR 82-61, 1982 WL 31387, at *2. Additionally, "[a] VE may provide relevant evidence about the demands of the past work as it was actually performed, and both the ALJ and the VE may rely on the claimant's testimony and other information describing his past work activities and responsibilities." *Mohamadmajid S.*, 2019 WL 9075957, at *4.

>     sufficient to determine how a particular job is usually performed,
>     it may be necessary to utilize the services of a vocational specialist
>     or vocational expert.

*See* SSR 82-61, 1982 WL 31387, at *2.

The Agency's Program Operations Manual System ("POMS") provides the following further guidance:

> • The claimant's past relevant work ("PRW") may be a composite job if it takes multiple DOT occupations to locate the main duties of the PRW as described by the claimant.
>
> • If you determine that PRW was a composite job, you must explain why.
>
> • When comparing the claimant's RFC to a composite job as the claimant performed it, find the claimant capable of performing the composite job only if he or she can perform all parts of the job.

POMS at DI 25005.020B (https://secure.ssa.gov/poms.nsf/lnx/0425005020).

Accordingly, an "ALJ must find the Plaintiff capable of performing the composite job only if he or she can perform all parts of the job" as it was actually performed. *Shealy v. Colvin*, No. 8:13-2383-RMG, 2015 WL 467726, at *12-13 (D.S.C. Feb. 4, 2015) (collecting case law noting that "an ALJ may not deem a plaintiff capable of performing past relevant work by dividing the demands of a composite job into two separate jobs and finding him or her capable of performing the less demanding of the two jobs," and "if Plaintiff's past job was in fact a composite job, POMS would have prohibited the ALJ from deciding whether Plaintiff could perform his past relevant work as it is generally performed").

Nevertheless, the mere fact that a claimant's past relevant work as to a given job, as generally performed in the national economy, involves less strenuous duties than his actual work at that job does not necessarily mean that the job is a composite one. *See Harris v. Kijakazi*, No. 1:20CV1133, 2022 WL 541438, at *6 (M.D.N.C. Feb. 23, 2022). Specifically,

> A former job performed by the claimant may have involved functional demands and job duties *significantly in excess* of those generally required for the job by other employers throughout the national economy. Under this test, if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be "not disabled."

SSR 82-61, 1982 WL 31387, at *2 (emphasis added).

In this case, the ALJ's step four analysis reads as follows:

> The claimant's work history and income records support work as a receiver laborer, Dictionary of Occupational Titles (DOT)# 922.687-058, medium exertional level, unskilled, Specific Vocational Preparation (SVP) 2; manager, retail stores DOT# 185.167-04[6], light exertional level, but performed at the medium exertional level, skilled, SVP 7 (Ex 3E, 9E). The claimant's work record is found in documents submitted to the Agency, as well as the use of a vocational expert. The undersigned, after a review of the file, finds the jobs meet the standards for past relevant work set forth by the Agency. (20 CFR 404.1565, 416.965). Specifically, the undersigned finds the claimant's income from the positions show she performed the work at the level of substantial gainful activity, that the time on the job was adequate to perform SVP 2 and SVP 7 work, and that the work was performed in the last 15 years, thus confirming that his job is past relevant work (Ex. 3E; 9D).
>
> The vocational expert testified in response to a hypothetical question that accurately reflects the claimant's residual functional capacity, that a person with the claimant's residual

11

> functional capacity and the claimant's age could perform the claimant's past relevant work as a manager, retail stores, as it is generally performed. In comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds the claimant can perform this job as generally performed, though not as she performed it. The claimant's residual functional capacity limits her to the light exertional level, which is compatible with her past relevant work at the light exertional level. Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the Dictionary of Occupational titles (DOT) and its companion publications, and she provided a reasonable explanation for any discrepancies between her testimony and the information contained therein (Ex. 16E).

(Tr. 27-28.)

Here, Plaintiff's contention that the ALJ erred in failing to recognize that her past relevant work was a composite job is unpersuasive. (Docket Entry 7 at 14-17; Docket Entry 10 at 5-7.) First, Plaintiff failed to cross-examine the vocational expert at the hearing regarding her classification of Plaintiff's past relevant work, despite representation by counsel and cross-examination on other subjects. (Tr. 41-73.) Case law supports the conclusion that this constitutes waiver of Plaintiff's right to now attack that classification.[8]

---

[8] *See Hurtado v. Berryhill*, 749 Fed. App'x 663, 664 (9th Cir. 2019) ("Because Hurtado did not raise [the composite job issue], present any evidence, or challenge the vocational expert's testimony at the administrative hearing, those arguments are forfeited."); *Bunton v. Colvin*, No. 1:10CV786, 2014 WL 639618, at *5 (M.D.N.C. Feb. 18, 2014) ("[A]t the hearing before the ALJ, Plaintiff failed to mount any opposition (or even to attempt to develop any record contrary) to the view that he retained the capacity to do the above-referenced three light-exertion-level jobs . . . . As a result, Plaintiff waived, in this Court, any challenge to the ALJ's finding (based on the VE's testimony) that Plaintiff could perform those three types of jobs."); *Jones v. Commissioner of Soc. Sec.*, No. 4:19CV28, 2020 WL 3076410, at *2 (N.D. Miss. June 10, 2020) ("[A]t step four, where the claimant retains the burden to establish that he is unable to perform his PRW, a claimant who disagrees with the VE's characterization of [the claimant's] PRW is obligated to raise that issue and press it on cross-examination or else the

Plaintiff's objection to the contrary is not persuasive. Plaintiff relies on *Carr v. Saul*, 141 S.Ct. 1352 (2021), a case in which the Supreme Court determined that social security disability claimants were not required to argue at the agency level that the ALJs hearing their claims were unconstitutionally appointed. (Docket Entry 10 at 6.) However, Plaintiff does not present a constitutional challenge to any agency process. Instead, her argument concerns an issue that lies within the typical adjudicative process of a disability insurance benefits claim and, therefore, she was required to raise it. *See Kohne v. Kijakazi*, No. CV 2:23-037-DCR, 2023 WL 5220853, at *5 (E.D. Ky. Aug. 14, 2023); *see also Sylvester v. Comm'r of Soc. Sec.*, No. 4:23-CV-00778-SL, 2024 WL 1531323, at *4 (N.D. Ohio Feb. 26, 2024) ("*Carr*'s holding has no relevance to this case. In *Carr*, the Supreme Court held that social security plaintiffs are not required, as prerequisite to judicial review, to exhaust *constitutional challenges* to the ALJs' appointments. *Carr* did not involve – much less address – whether it is improper for a court

---

issue is waived."), *aff'd sub nom.*, *Jones v. Saul*, 834 Fed. App'x 839 (5th Cir. 2020); *Kawelo v. Colvin*, No. CV 15-223, 2016 WL 3983223, at *8 (D. Haw. July 25, 2016) ("[The plaintiff], represented by counsel at the hearing, did not question or otherwise object to the VE's testimony based upon the DOT's classification of her PRW as three different positions. Consequently, the ALJ, relying on the unrefuted testimony of [the plaintiff] and the VE, rationally found that [the plaintiff] performed three separate jobs while employed at the bank."), *aff'd sub nom.*, *Kawelo v. Berryhill*, 732 Fed. App'x 584 (9th Cir. 2018); *Norman v. Commissioner of Soc. Sec.*, No. 1:14CV2374, 2016 WL 922741, at *3 (N.D. Ohio Mar. 11, 2016) ("[D]uring the hearing, where [the] plaintiff was represented by counsel, she [ ] did not challenge the VE's testimony regarding her ability to perform her PRW as a case worker under [DOT] 195.107-010, which is generally performed at a sedentary exertional level. [On judicial review], she claims that was an incorrect classification because it does not address her career concentration on adolescents. She claims she should be classified under [DOT] 195.107-114 (Caseworker, Child Welfare), which is generally performed at the light exertional level. This objection is readily overruled due to the fact that the alleged misclassification was never raised in any fashion during the hearing and was never otherwise pointed out to the ALJ.").

13

to determine that a claimant waived a Step Four/Five argument where a claimant's counsel fails to cross-examine the VE about any potential conflicts in her testimony. Thus, Ms. Sylvester's assertion that the Commissioner's argument is an improper attempt to create a judicial issue exhaustion rule is not well-taken.") (citations, quotations omitted).[9]

Second, even assuming Plaintiff is correct, and the composite job issue was not waived, substantial evidence in the record supports the conclusion that her past relevant work as a manager of a retail store was not a composite job. Per the DOT a manager of a retail store:

> **Manages retail store engaged in selling specific line of merchandise, such as groceries**, meat, liquor, apparel, jewelry, or furniture; related lines of **merchandise**, such as radios, televisions, or household appliances; or general line of merchandise, **performing following duties personally or supervising employees performing duties**: Plans and prepares work schedules and **assigns employees to specific duties.** Formulates pricing policies on **merchandise** according to requirements for profitability of store operations. Coordinates sales promotion activities and **prepares, or directs workers preparing, merchandise displays** and advertising copy. **Supervises employees engaged in sales work**, taking of inventories, reconciling cash with sales receipts, keeping operating records, or preparing daily record of transactions for ACCOUNTANT (profess & kin.) 160.162-018, or **performs work of subordinates, as needed. Orders merchandise or prepares requisitions to replenish merchandise on hand.** Ensures compliance of employees with established security, sales,

---

[9] Plaintiff also invokes the Supreme Court's decision in *Sims v. Apfel*, 530 U.S. 103 (2000). (Docket Entry 10 at 6.) In *Sims*, the Supreme Court held that Social Security claimants who raised issues before an ALJ need not raise them again before the Appeals Council to preserve them for judicial review. 530 U.S. at 112. But, in so holding, the *Sims* Court explicitly limited its ruling to proceedings before the Appeals Council. *Id.* at 107 ("Whether a claimant must exhaust issues before the ALJ is not before us."). Consequently, *Sims* is not relevant to the issue present here, where Plaintiff failed to present the composite jobs issue to the ALJ.

14

> and record keeping procedures and practices. May answer customer's complaints or inquiries. May lock and secure store. May interview, hire, and train employees. May be designated according to specific line of **merchandise** sold, such as women's apparel or furniture; related lines of **merchandise**, such as camera and photographic supplies, or gifts, novelties, and souvenirs; type of business, such as mail order establishment or auto supply house; or general line of **merchandise**, such as sporting goods, drugs and sundries, or variety store.

Manager, Retail Store, DICOT 185.167-046 (G.P.O.), 1991 WL 671299 (emphasis added).

Here, Plaintiff submitted three work history reports. The first was submitted in August of 2021. (Tr. 233-40.) It listed "Dollar General" as Plaintiff's job title and "Retail" under "Type of Business." (Tr. 233.) Plaintiff explained, in pertinent part, that she was a manager at Dollar General and spent "all day" waiting on customers, putting out stock, unloading trucks, and sweeping and mopping floors. (Tr. 235.) She explained that she put out freight on shelves every day and also helped customers to their cars with merchandise. (Tr. 235.) Plaintiff indicated that she supervised six people six to eight hours a day, that she was a lead worker, and that she hired and fired employees. (Tr. 235.)

Plaintiff's second work history report was submitted in September of 2021. (Tr. 251-58.) When asked what she did as a manager "all day" at Dollar General, Plaintiff, in pertinent part, wrote "Payroll, scheduling, invoicing, unloading trucks, swept floors, stayed overnight at times, made sure employees put up new merchandise and restock. Used pallet jacks. Used computers to input payroll, inventory. Climb ladders to put product on shelf." (Tr. 253.) Under "Lifting and Carrying" Plaintiff explained that "We carried items off of the truck, at least 8 hours per day. Carried between 50-75 lbs bags of dog food, 3 times per week. Lifted 50-75 lbs

15

per day with carrying items to cars for customers and stocking." (Tr. 253.) Plaintiff indicated that she was a lead worker, hired and fired employees, and supervised six other people nine hours a day. (Tr. 253.)

Plaintiff's third work history report was submitted in January of 2022. (Tr. 280-91.) She explained, in pertinent part, that she worked at Dollar General as a manager, which she did "all day." (Tr. 280, 286.) Regarding lifting and carrying, Plaintiff spent "most of the time . . . fill[ing] shelves[.]" (Tr. 286.) Plaintiff was a lead worker, supervised four to five employees six to eight hours a day, and was also responsible for hiring and firing employees. (Tr. 286.)

Plaintiff described and clarified her job duties in more detail at her administrative hearing. At that hearing, in pertinent part, the following exchange occurred between Plaintiff and the ALJ:

> Q. And as far as your work history goes, I think you indicated you worked for a Dollar General between 2001 and 2016. What did you do there?
>
> A I was at the register. I did the -- unloaded trucks. I stocked shelves. I did payroll. I submitted payroll. I waited on customers. I helped customers find what they needed. I also did -- checked in vendors. I did the -- when I was there I -- when I -- when I worked I did -- like I said I did ring up customers. I redid the shelves. I did the vendors. I did the -- when the trucks would come in, the warehouse trucks, I did unload them. Then we had to -- I restocked the shelves, also. I put the stuff on the shelf. I had to pull out the stuff on -- what we call rolltainers. They were big wire racks that we pulled out, put the stuff on the shelves. We at the time did not price things. Then they started we had to price things and then -- when we receive it and then put it out. Vendors would come in through the front door. We also -- I also had to receive those. Train people when they'd come in. I did the hiring of the people when they would come in. I'd interview them. We would -- I would do those things that we had to do like as far as

16

> inventory, would inventory the store. Things like that. And then we had to -- was on -- most of the time we – I'd be at the store by myself.
>
> Q Okay. And did you hire and fire employees?
>
> A. Yes, sir.

(Tr. 42-43.)

The vocational expert classified Plaintiff's "Dollar General store job" as "manager retail store" with a DOT number of 185.167-046, with an SVP of 7, and a strength level of light as generally performed, but medium as actually performed. (Tr. 67.) The vocational expert concluded further that a hypothetical individual with Plaintiff's RFC could perform the manager of a retail store position, but "[t]he position of manager retail store would remain under that hypothetical as it's generally performed in the DOT, but not as was actually performed in this case." (Tr. 69.)

Plaintiff now contends that the ALJ erred by failing to consider or acknowledge that she performed a composite job. Specifically, Plaintiff contends that she:

> testified that as a Dollar General manager she completed and submitted payroll, priced items, trained employees, interviewed and hired employees, and fired employees (Tr. 42-43). She supervised 6 to 8 employees (Tr. 235). She was responsible for payroll, scheduling, invoicing, and supervising the placement of new merchandise and restocking (Tr. 253). These duties fall squarely within the description of the duties of a retail store manager, pursuant to the DOT. DOT § 185.167-046.
>
> However, [Plaintiff] also performed significant duties not ordinarily performed by a retail store manager. As part of her duties as a Dollar General store manager, [Plaintiff] was required to use the cash register to wait on customers, unload trucks, and stock shelves (Tr. 42-43). [Plaintiff] confirmed in her Work

17

> History Reports that she unloaded trucks, swept and mopped floors, used pallet jacks, and climbed ladders to put products on shelves (Tr. 235, 253). [Plaintiff] put freight on the shelves "every day" (Tr. 235). These duties went beyond the duties expected of a retail store manager.
>
> [Plaintiff] was effectively performing the duties of several occupations in her single job as a retail store manager. She was working as a cashier. DOT § 211.462-010. She was working as a stock clerk. DOT § 222.387-058. She was working as a cleaner. 1991 WL 645969. [Plaintiff's] past work was a composite job because it required her to perform the duties of several different occupations on a daily basis. SSR 82-61, 1982 WL 31387 * 2.

(Docket Entry 7 at 16.)

This is not a persuasive argument. As explained earlier, the mere fact that Plaintiff's past relevant work, as generally performed in the national economy, involves less strenuous duties than her actual work at that job, or functional demands and job duties *significantly in excess* of those generally required, does not necessarily mean that the job is a composite one. *See Harris v. Kijakazi*, No. 1:20CV1133, 2022 WL 541438, at *6 (M.D.N.C. Feb. 23, 2022); SSR 82-61, 1982 WL 31387, at *2 (emphasis added).

Moreover, it is clear from the DOT job description set forth above that "[m]anag[ing a]retail store engaged in selling [a] specific line of merchandise" involved a wide array of duties. It is also clear from Plaintiff's work history, also set forth above, that she performed a wide array of managerial duties and spent a great deal of her time supervising four to six employees. This comports with the DOT definition of her position, which includes "[s]upervis[ing] employees engaged in sales work" and "perform[ing the] work of subordinates, as needed.*"* Logic suggests that "sales work" at a "retail store" involves the use of a cash register, either

18

directly or through supervision. Likewise, the ten references to "merchandise" in the DOT job description (including preparing the merchandise for display and securing its replenishment) adequately captures the notion that a retail store manager, either directly or in a supervisory capacity, could be expected to unload and stock merchandise. Likewise, it stands to reason that managing a store, assigning employees specific duties, displaying merchandise, securing the store, and dealing with customers would carry with it the implicit obligation to keep the facility (either directly or indirectly through supervision) clean.

In other words, using the cash register at a retail store, moving/loading/unloading merchandise at a retail store, stocking shelves at a retail store, and cleaning at a retail store are duties anticipated by the DOT job description for a retail store manager set forth and emphasized in the block quote above. Case law supports this conclusion as well.[10] The duties

---

[10] *See, e.g., Morris v. Kijakazi*, No. CV 22-961 KK, 2023 WL 8096887, at *8 (D.N.M. Nov. 21, 2023) ("Plaintiff fails to meet her burden by simply suggesting that she also performed stocking and cashier duties in addition to her managerial duties. To prevail, she would need to, instead, demonstrate that her duties at the truck stop were *distinct* from those of a retail manager. She fails to make such a showing. Rather, the record supports the ALJ's conclusion that Plaintiff's past relevant work was properly classified as a retail manager, even though she sometimes performed stocking and cashiering and at times performed the work of the employees she was supervising. As a result, Plaintiff has failed to show that her past relevant work was a composite job or that the ALJ and VE failed to accurately classify it."); *Maletto v. Kijakazi*, No. CV 20-12508 (FLW), 2022 WL 170873, at *8 (D.N.J. Jan. 19, 2022) (rejecting composite job argument even though "Plaintiff testified that as a [retail store] manager, she was required to make schedules, load inventory, receive merchandise, inspect merchandise, ensure the store was clean, change lightbulbs, and change displays, among other tasks.'"); *Kyle R. v. Saul*, No. 2:20-CV-04453-AFM, 2021 WL 1374487, at *2-3 (C.D. Cal. Apr. 12, 2021) (rejecting the argument that retail manager position at Target was a composite job even though it included assisting with loading/unloading as well as setting up displays by stacking and moving things) (internal quotations omitted); *Torres v. Saul*, No. CIV 20-0683

to which Plaintiff now points to (such as cleaning, using the cash register, and moving merchandise around) are all part (either explicitly or implicitly) of the DOT job definition of a retail store manager. Noting about the record or the evidence to which Plaintiff now points suggests (much less compels the conclusion) that Plaintiff performed a composite job. Instead, the record supports the conclusion that Plaintiff performed a single job of retail store manager, which required the performance (either directly or indirectly) of a number of associated duties anticipated by the DOT. Plaintiff's objection has no merit.

## V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct, supported by substantial evidence, and susceptible to judicial review. Accordingly, this Court **RECOMMENDS** that the final decision of the Commissioner be upheld.

/s/ Joe L. Webster
United States Magistrate Judge

May 28, 2024
Durham, North Carolina

---

KBM, 2021 WL 2859683, at *7 (D.N.M. July 8, 2021) (concluding that retail manager position job description included "stocking, mopping, [and] cleaning restrooms").